## DELAWARE, L. & W. R. CO. v. SWITCHMEN'S UNION OF NORTH AMERICA et al.

(Circuit Court, W. D. New York. December 13, 1907.)

No. 323.

1. INJUNCTION—RIGHT TO RELIEF—PROPERTY RIGHTS.

To justify the exercise of the injunctive powers of a court, the unlawful interference or threatened interference with complainant's property rights must be shown.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, §§ 9, 10.]

2. MASTER AND SERVANT—TERMINATION OF EMPLOYMENT—RIGHT TO QUIT.

Workmen may strike or quit their employment at pleasure, either singly or in concert, even though it be in violation of their service contract.

3. TRADE UNIONS—STRIKES—ADVICE OF OFFICERS.

Workmen are not forbidden by law from seeking, taking, or following the advice of the officers of their union or labor organization, with reference to the advisability of a strike.

4. INJUNCTION—CONSPIRACY—INDUCING STRIKE.

Where the by-laws of a labor union provided that no strike could be declared on any railroad system unless two-thirds of the members on such system first voted for the same, and that members were not permitted to engage in a strike or encourage any other member to strike without the consent of two-thirds of the members employed on that system, and of the international president of the union, a poll having been taken resulting in favor of a strike, the consent of the president of the union did not constitute such an incitement or inducement to strike as would justify the continuance of a strike injunction, there being no proof of an intention on the part of defendants to conspire to inflict a wrong on complainant, nor to induce others to strike.

5. CONSPIRACY—EVIDENCE—WEIGHT.

Where a circular inducing a strike was promptly repudiated by the labor union involved, and its origin and authorship was not proved, it was not entitled to probative weight to prove a conspiracy to induce and intimidate members of the union to strike.

6. TRADE UNIONS—OFFICERS—COMMITTEES—CONFERENCE.

Members of a labor union were entitled to select a committee to request a conference with their employer and to delegate an officer of the union to represent them and advocate an adjustment of their differences with a view of effectuating an amicable arrangement.

In Equity.

Rogers, Locke & Babcock and Louis L. Babcock, for complainant. Henry W. Killeen and V. H. Riordan, for defendants.

HAZEL, District Judge. This motion is for an injunction pendente lite in an action brought by the Delaware, Lackawanna &

Western Railroad Company against the Switchmen's Union of North America, F. T. Hawley, its president, Buffalo Lodge No. 4 of said Switchmen's Union, and William Jordan, its president, together with several other individuals named in the bill, who it is alleged combined and conspired to interfere with and obstruct complainant's business, and to compel or induce by intimidation the switchmen employed by the complainant to break a certain subsisting service contract, dated November 20, 1906, which expires on January 1, 1908, or thereafter upon 30 days' notice of revision given by either party. The contract in behalf of the complainant is signed by its general superintendent and in behalf of the switchmen by R. W. Flynn, general chairman, S. E. Heberling, and E. M. Rine. On November 23, 1907, an ad interim injunction was granted restraining the defendants from combining and conspiring with each other to induce the complainant's switchmen to violate their service contract, and from threatening, compelling, or intimidating such employés and members of the Switchmen's Union to disregard such service contract, and quit the employ of the complainant. All the defendants have appeared herein, excepting the individual defendants, Heberling and Flynn, and filed a joint answer denying the alleged combination to induce a strike, and averring that the employés have grievances, and that the validity of the contract is denied by them. It is also specifically denied that any of the defendants have combined and conspired to interfere with, hinder, or obstruct the business of the complainant, but assert that the switchmen in the employ of the complainant themselves took the poll, and that if a strike is declared they intend to leave the employ of the complainant in a peaceable and lawful manner.

A motion to continue the injunction during the pendency of this action is now before me. I have given careful consideration to the subject-matter and affidavits read on both sides and the authorities, and am constrained to deny the application and vacate the existing restraining order. The basis for the exercise of the injunctive powers of the court must be the actual or threatened interference with the property rights of the complainant, and to invoke such powers, which imply the punishment for an infraction of the order of the court, the unlawful interference or threatened interference must be satisfactorily shown. The specific allegations of the bill alleging interference and unlawful inducement to strike or cease work is that the defendants, under the direction of said Hawley, the president of the Switchmen's Union, caused a poll of the switchmen in the employ of the complainant to be taken declaratory of a strike or no strike, and, the poll having been in favor of a strike, that the said Hawley intends to conduct the same pursuant to the constitution and by-laws of the defendant Switchmen's Union and its subordinate lodge Buffalo Lodge No. 4. The bill and affidavits of complainant reveal an absence of sufficient facts by which the court may perceive that there was or is threatened any unlawful interference with complainant's property rights by way of inducement, enticement, threats, or intimidation to cause such threatened

strike. That workmen may strike or quit their employment ad libitum is well recognized by all the authorities, and that they may do so singly or in concert, even though it be in violation of their service contract, has also been held. In Hopkins v. Oxley Stave Co., 83 Fed. 912, 28 C. C. A. 99, the principle is thus stated:

"The courts have invariably upheld the right of individuals to form labor organizations for the protection of the interests of the laboring classes, and have denied the power to enjoin the members of such associations from withdrawing peaceably from any service, either singly or in a body, even where such withdrawal involves a breach of contract."

And in Arthur v. Oakes, 63 Fed. 310, 11 C. C. A. 209, 25 L. R. A. 414, an earlier case, Mr. Justice Harlan, sitting in the Circuit Court of Appeals for the Seventh Circuit, and writing the opinion of the court, says:

"Those employés having taken service, first with the company, and afterwards with the receivers, under a general contract of employment, which did not limit the exercise of the right to quit the service, their peacable cooperation as the result of friendly argument, persuasion, or conference among themselves, in asserting the right of each and all to refuse further service under a schedule of reduced wages, would not have been illegal and criminal, although they may have so acted in the firm belief and expectation that a simultaneous quitting without notice would temporarily inconvenience the receivers and the public."

The court broadly held that the employés in good faith and peaceably had the right to leave the service of their employer, but without injuring or interfering with the free action of others. It follows, therefore, whenever a conspiracy is alleged that it must be shown that the intention of the conspirators was to inflict wrong upon the complainant, and if the defendants herein acting together tried to have the employés break their contract, or urged them to leave the employ of the complainant, the court has power to interfere. But if it appear that the workmen upon their individual responsibility desire to breach the contract, and quit their employment because of alleged grievances or any other reason, a court of equity will not interfere. Such being the law, how stands this case?

The only justification for the preliminary injunction is the allegation that the defendants incited or coerced the members of the union employed by complainant to violate their contract and incited them to stop work in a body. The rule is conceded by counsel for complainant that the switchmen can strike singly or collectively as the result of their individual action, though such action may have been induced by co-operation and lawful persuasion. The law does not prohibit workmen from holding conferences, and discussing their grievances with the object and purpose of striking or ceasing work at a preconcerted time, and it is only when such action by employés is accompanied by acts of violence, threats, undue persuasion, or intimidation, or such wrongful method as will irreparably injure the aggrieved party that resort may be had to a court of equity for redress. The workmen are not forbidden by law from seeking, taking, or following the advice of the officers of their union or labor organization. As bearing upon this point, the

case of Thomas v. Cincinnati, N. O. & T. P. Ry. Co. (C. C.) 62 Fed. 803, is instructive. In that case Judge Taft, at page 817 of 62 Fed., enunciated the doctrine that the employés have labor to sell, and accordingly have the right to accumulate a fund for the support of those who engage in a legal strike. He says:

"They have the right to appoint officers who shall advise them as to the course to be taken by them in their relations with their employers. They may unite with other unions. The officers they appoint, or any other person to whom they may choose to listen, may advise them as to the proper course to be taken by them in regard to their employment, or, if they choose to repose such authority in any one, may order them, on pain of expulsion from their union, peaceably to leave the employ of their employer because any of the terms of the employment are unsatisfactory."

According to the constitution and by-laws of the defendant Switchmen's Union and of the subordinate lodge no strike can be declared on any system unless two-thirds of the members on such system shall first have voted for the same and then it shall be conducted by the international president. Members of the union are not permitted to engage in a strike or encourage any other member to engage in one without the consent of two-thirds of the members employed on that system and that of the international president. The affidavits read on this motion disclose that the poll of the members has already been taken in favor of a strike, and that the sanction of the defendant Hawley is required to effectuate the same. Is the consent of the president in connection with the asserted direction by him to take the poll such an incitement or inducement to strike as to justify a continuance of the injunction? I think not, for, as already mentioned, a peaceable strike is not per se illegal, and the defendant Hawley acting under the constitution and by-laws of the union could at the request of the members advise the employés as to their proper and lawful action. Wabash R. Co. v. Hannahan (C. C.) 121 Fed. 563. Under the by-laws of the union his consent to strike must follow the poll to strike, and, seemingly, is necessary before the striking members can require its officers to levy assessments upon the members to pay the expenses and benefits provided for. Reference was made by complainant to a printed circular letter purporting to have been issued by the Switchmen's Union and mailed to switchmen throughout the United States soliciting membership in said union and practically inciting a strike. Such circular, however, is not entitled to probative weight, its origin and authorship not being proven, and it appearing to have been promptly and seasonably repudiated by the union. In the absence, therefore, of satisfactory evidence that the defendants have unlawfully combined and conspired to induce, incite, or intimidate the members of the said Union to strike and maliciously interfere with the carrying out of the contract between the complainant and its employés, I am not inclined to continue the restraining order.

Stress is laid by the complainant upon the decision recently made by Judge Thompson, in Barnes v. Berry (C. C.) 156 Fed. 72, but in that action the contract was between two associations, the United Typothetæ of America and the International Printing Pressmen and Assistants' Union of North America. It appeared that the officers of the union

felt aggrieved because their predecessors had not strongly resisted certain provisions of the contract which excluded the recognition of an eight-day clause until 1909 and a proposed closed-shop clause, and, therefore, when a change in the contract was proposed by the Typothetæ, they incited strikes and threatened strikes against different members of the Typothetæ residing in various parts of the country unless their demands for a modification of the contract were consented to. This, manifestly, was a case where the employés were being urged and induced to strike by the officers of their union to satisfy their desire to have the eight-hour day clause inserted, they having been elected officers on such an issue. The court properly held that the officers of the defendant organization could not exercise their power unlawfully over its members for the purpose of repudiating the contract, and compel the inauguration of "closed shop" which was contrary to public policy, and restrained the incitement, inducement, or coercion of the men to resort to a strike in different parts of the country to compel a change in the contract. In the case at bar, it may be conceded that the defendants have influence over the switchmen employed on complainant's road, yet that such influence has been improperly exercised in view of the rule of law permitting employés to strike even though they have entered into a service contract is not clear. If I were satisfied that the men were unlawfully instigated, incited, or urged by the defendants to sever their service contract of employment, which is claimed to remain in force until January 1, 1908, or thereafter until either party gives 30 days' notice of a desired revision, I would not hesitate to grant the injunction. But even assuming that the poll of the employés was directed by the defendants, as claimed in the bill, it cannot be held as a matter of law, in the absence of satisfactory proof of a combination or conspiracy to break a valid contract, that such acts on their part, standing alone, presume unlawful incitement, persuasion, or coercion of the members of the union, to engage in an illegal strike.

It is further claimed by the complainant that the correspondence in evidence passing between it and various officers of the union, on the subject of a conference to discuss the grievances of the switchmen and the request for increased wages, should be considered as showing that the defendants initiated the alleged dissatisfaction among the employés with a wrongful intention to injure the complainant in its business. But upon this point I am inclined to think that the defendants had the right to select a committee to request a conference and to represent them, and, moreover, they could, if they chose to do so, delegate an officer of the Switchmen's Union to represent them and to advocate an adjustment of their grievances and difficulties, with a view of effectuating an amicable arrangement.

The motion is denied.